UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GWENDOLYN GARCIA,

                                          Plaintiff,       19-cv-6056-FPG

v.                                                     DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.

## INTRODUCTION

On October 23, 2015, Plaintiff filed an application for supplemental security income ("SSI") benefits alleging disability beginning on June 30, 2013. Tr.[1] at 208. After the application was denied, Plaintiff timely requested a hearing. Tr. 136-38. On February 23, 2018, she appeared with her attorney, Mary Ellen Gill, Esq., and testified before Administrative Law Judge Eric Eklund ("the ALJ"). Tr. 38-80. A Vocational Expert ("VE"), Ruth Perook, also testified at the hearing. Tr. 76-79. The ALJ issued an unfavorable decision on May 8, 2018. Tr. 17-30. Plaintiff then requested review by the Appeals Council, which the Council denied on November 19, 2018, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Subsequently, Plaintiff brought this action pursuant to Title XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner which denied her application for SSI.[2] ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 15, 24. For the reasons that follow, Plaintiff's motion for judgment on the pleadings is

---

[1] "Tr." refers to the administrative record in the matter. ECF No. 8.

[2] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

1

GRANTED IN PART and DENIED IN PART, the Commissioner's motion is DENIED, and the matter is remanded back to the Commissioner for further proceedings.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it

imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

At Step One of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of October 23, 2015. Tr. 19. At Step Two, the ALJ found that Plaintiff suffered from several severe impairments: anxiety, depression, panic attacks, PTSD personality disorder, and agoraphobia. Tr. 20. He also determined that Plaintiff's alcohol abuse disorder was not a severe impairment. *Id.* At Step Three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing. *Id.* The ALJ then determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, with several nonexertional limitations. The ALJ found that Plaintiff was limited to simple, unskilled work in a low stress environment with only occasional decision making and changes in the work setting, no interaction with the public, occasional interaction with supervisors and coworkers, but without any tandem work. Tr. 22.

At Step Four, the ALJ found that Plaintiff did not have any past relevant work. Tr. 28. He then proceeded to Step Five, where he determined that there were jobs in the national economy that a person of Plaintiff's age, education, and work experience could perform. Tr. 28-29. Specifically, the ALJ found that Plaintiff could work as a dishwasher, price marker, and mail sorter. Tr. 29.

### II. Analysis

Plaintiff advances several arguments in support of her motion essentially arguing that the RFC determination was not supported by substantial evidence because the ALJ applied the incorrect legal standard when he evaluated medical opinions contained in the record. ECF No. 15 at 24-33. Plaintiff submits that based on the nature of the ALJ's errors the matter should be

4

remanded solely for calculation and payment of benefits. *Id.* at 30-31. The Court agrees with Plaintiff that the matter should be remanded, however, it disagrees that remand for calculation of benefits is warranted at this time.

As a general matter, pursuant to the fourth sentence of 42 U.S.C. § 405(g), a court is authorized to enter judgment affirming, modifying, or reversing the Commissioner's decision with or without remanding the cause for rehearing. Section 405(g) allows reversal and remand solely for calculation of benefits without a rehearing "where [the] Court has . . . no apparent basis to conclude that a more complete record might support the Commissioner's decision." *Rosa*, 168 F.3d at 83. Where "the record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for calculation of benefits is appropriate." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Giddings v. Astrue*, 333 F. App'x 649, 655 (2d Cir. 2009) ("[A] decision to reverse and direct an award for benefits should be made only when . . . substantial evidence on the record as a whole indicates that the [c]laimant is disabled and entitled to benefits." (internal citations omitted)). However, "when there are gaps in the administrative record or the ALJ has applied an improper legal standard, a court should remand the case to the Commissioner for the further development of the record." *Speruggia v. Astrue*, 05-CV-3532 (NGG), 2008 WL 818004, at *14 (E.D.N.Y. Mar. 26, 2008) (internal citation omitted). Here, the Court finds that the ALJ's application of an improper legal standard warrants remand for further administrative proceedings.

Here, in formulating Plaintiff's RFC, the ALJ determined that Plaintiff was able to perform a full range of simple, unskilled, and low stress work at all exertional levels, but with several specific nonexertional limitations such as occasional interaction with coworkers and supervisors, and no interaction, other than superficial, with the public. Tr. 22. The ALJ based this RFC analysis

5

on the three medical opinions contained in the record – opinions of Drs. Bhandari and Amos, Plaintiff's treating mental health physicians, and a psychiatric evaluation report of the consultative examiner Dr. Farmer. Tr. 27. The ALJ did not afford substantial weight to either opinion, and, instead, assigned each of them "little" or "less" weight because they were inconsistent with the physicians' contemporaneous treatment notes, and lacked objective analysis, testing, or an explanation for the restrictive limitations in Plaintiff's functioning that they opined about.[3] Tr. 27-28. The Commissioner argues that the ALJ did not err when he disregarded the above medical opinions because he was not required to base his RFC on any particular opinion, and, instead, was allowed to consider Plaintiff's treatment notes, activities of daily living, and all other evidence contained in the record to determine that Plaintiff could perform simple, unskilled, and low stress work. ECF No. 24 at 8-9. While the Court agrees with the Commissioner that an ALJ must consider all the relevant evidence, including medical opinions, claimant's physical and mental abilities, non-severe impairments, and subjective evidence of symptoms that could interfere with work activities in making an RFC assessment, *see* 20 C.F.R. §§ 416.945(a)-(e), the Commissioner's argument is, nonetheless, misplaced.

It is well-settled that an ALJ must defer to an opinion of a claimant's treating physician when formulating the claimant's RFC because it reflects judgments about the nature and severity of the claimant's impairments, and explains what the claimant can still do despite those impairments. *Halloran v. Barnhart*, 362 F. 3d 28, 32 (2d Cir. 2004); *see also* 20 C.F.R. § 416.927(a). Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory

---

[3] The ALJ "accepted" portions of Dr. Farmer's opinion that Plaintiff's psychological problems were not significant enough to interfere with her ability to function on a daily basis, and his testing of Plaintiff's attention and concentration skills. Tr. 27.

6

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). In the mental health context, "the treating physician rule is particularly important" since "mental disabilities are difficult to diagnose without subjective, in-person examination." *Bates v. Colvin*, 15-CV-6416L, 2016 WL 6677191, at *2 (W.D.N.Y. Nov. 14, 2016) (internal citation and quotation omitted). If an ALJ refuses to afford controlling weight to the medical opinion of a treating physician, then the ALJ must comprehensively set forth the reasons for the weight assigned to the treating physician. 20 C.F.R. § 416.927(d)(2); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (An ALJ's "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.") (citation omitted).

"[E]ven though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself." *Barnhardt v. Saul*, 18-CV-6632-MJP, 2020 WL 1330704, at *2 (W.D.N.Y. Mar. 23, 2020); *see also Charland v. Comm'r of Soc. Sec.*, No.13-CV-492 (GTS/WBC), 2016 WL 1117515, at *2 (N.D.N.Y. Mar. 22, 2016) (as a layperson, an ALJ "cannot assess a plaintiff's RFC based on [his or her] own interpretation of the medical evidence"); *Lowe v. Colvin*, 6:15-cv-06077 (MAT), 2016 WL 624922, at *5 (W.D.N.Y. Feb. 17, 2016) ("RFC is a medical assessment; therefore, the ALJ is precluded from making his assessment without some expert medical testimony or other medical evidence to support his decision." (citations omitted)). The Court recognized that when the record contains sufficient evidence from which the ALJ can access the claimant's RFC, *see Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013), or when the medical evidence shows a relatively minor physical impairment allowing the ALJ to render a

common sense judgment about a claimant's functional capacity, an ALJ's reliance on a formal medical opinion is not necessary. *House v. Astrue*, No. 5:11-CV-915 (GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013). However, where, as here, Plaintiff suffers from several severe mental impairments, the ALJ is not qualified to make an RFC determination without relying on a medical opinion about Plaintiff's abilities to perform work on a continuous and substantial basis. Consequently, an ALJ must normally rely on a medical opinion or other functional assessment from a medical source to translate the plaintiff's medical impairments into specific functional restrictions. *See Spivey v. Comm'r of Soc. Sec.*, 338 F. Supp. 3d 122, 127 (W.D.N.Y. 2018) ("While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations *from a medical source*." (emphasis added and internal quotation marks omitted)). Here, the ALJ recognized that Plaintiff has several severe mental impairments – anxiety, depression, panic attacks, PTSD personality disorder, and agoraphobia – which together may manifest in individualized and complex ways. *See Lilley v. Berryhill*, 307 F. Supp. 3d 157, 161 (W.D.N.Y. 2018) ("[T]he leeway given to ALJs to make 'common sense judgments' does not typically extend to the determination of mental limitations, which are by their very nature 'highly complex and individualized." (internal citation omitted)); *Jones v. Colvin*, No. 14-CV-556S, 2015 WL 5126151, at *4 (W.D.N.Y. Sept. 1, 2015) ("[B]ecause the ALJ concluded that plaintiff's depression was significant enough to constitute a severe impairment, his subsequent failure to obtain a medical assessment of the extent of that impairment from either a treating or consultative examiner quantifying [p]aintiff's mental limitations rendered the record incomplete."); *Ramos v. Colvin*, No. 13-CV-6503P, 2015 WL 925965, at *10 (W.D.N.Y. Mar. 4, 2015) (the ALJ erred with he did not rely on a medical source statement or a

8

consultative examination report to assist him in translating plaintiff's treatment notes into an RFC assessment especially when plaintiff suffered from mental impairments, received treatment, and experienced continuing symptoms of depression and PTSD (collecting cases)).

Here, the ALJ's disregard of both treating physicians' opinions was not justified. First, to the extent the ALJ had concerns about the nature and severity of marked limitations stemming from Plaintiff's mental impairments identified by both Dr. Bhandari and Dr. Amos and the existence of any clinical findings to support their opinions, the ALJ was obligated to follow-up with both physicians first, instead of dismissing their opinions as baseless. *Lopez-Tiru v. Astrue*, No. 09-CV-1638 (ARR), 2011 WL 1748515, at *4 (E.D.N.Y. May 5, 2011) ("When a treating physician's opinion 'is not adequately supported by clinical findings, the ALJ must attempt, *sua sponte*, to develop the record further by contacting the treating physician to determine whether the required information is available.'" (internal citations omitted)). Additionally, both physicians were allowed to base their opinions about Plaintiff's inability to function in a work setting based on her subjective complaints of the symptoms associated with PTSD, panic attacks, and anxiety. *Green-Younger*, 335 F.3d at 107 (reliance on plaintiff's subjective complaints hardly undermines the opinion of the treating physician as to plaintiff's functional limitations, as "[a] patient's report of complaints, or history, is an essential diagnostic tool").

The ALJ's and the Commissioner's repeated references to the lack of hospitalizations and Plaintiff's normal mental health examinations, which, as they argue, undermined Plaintiff's allegations of disability are also misplaced. Generally, a claimant's appearance or demeanor, or activities of daily living do not constitute substantial factors that courts have to consider where disability is sought based on mental health limitations. *See De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 935 (2d Cir. 1984) (citing *Timmerman v. Weinberger*, 510 F.2d 439, 442

9

(8th Cir.1975) ("the applicant for disability need not be "a total 'basket case'"")); *Polidoro v. Apfel*, No. 98 CIV.2071(RPP), 1999 WL 203350, at *8 (S.D.N.Y. Apr. 12, 1999) ("A claimant need not be an invalid, incapable of performing any daily activities, in order to receive benefits under the SSA."). Here, even though Plaintiff often appeared cooperative, appropriately dressed, with normal speech, attention, abstract reasoning, and without hallucinations or delusions, the record, nonetheless, contains countless evidence of her examinations when Plaintiff appeared moderately anxious, crying, angry, with having short term memory problems, impaired judgment, limited sense of responsibility, labile and constricted affect, apprehensive mood, pressured and rapid speech, irrational thinking, and with only an occasional smile. Tr. 868, 883, 891, 917, 953, 1132, 1202, 1206-07. Treatment records of all Plaintiff's providers, including her treating mental health physicians, were consistent in such way that they repeatedly identified symptoms associated with PTSD, bipolar,[4] panic disorders and agoraphobia such as her daily panic and anxiety attacks, depression, feelings of fear, including fear of dying, loss of interest, low energy, hopelessness, nervousness, shortness of breath, fatigue, crying spells, hypersomnia, irritability, sense of impending doom and failure, delusions and auditory hallucinations, night tremors, flashbacks, obsessive thought, guilt, and other symptoms. Tr. 777, 867, 880, 967-68, 967, 981 992, 1060, 1096, 1171-72, 1180, 1192, 1196, 1200-02, 1233, 1245, 1248. Despite regular treatment, Plaintiff's providers continuously noted little change or the worsening of her symptoms. Tr. 1173-76, 1184-88, 1201-06, 1227, 1231, 1243, 1245.

Furthermore, it is unclear how the ALJ was able to determine that Plaintiff was able to perform the basic mental demands of unskilled work despite her severe mental limitations without

---

[4] Aside from Plaintiff's PTSD personality disorder, anxiety, depression, panic attacks, and agoraphobia recognized by the ALJ as severe impairments, Plaintiff was also diagnosed with bipolar disorder by some of her mental health providers. Tr. 968, 1227.

relying on a medical opinion. *See* SSR 85-15, 1985 WL 56857, *5 (S.S.A. Jan. 1, 1985) (the basic demands of unskilled work include the abilities to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting on a sustained basis). Because a mentally-impaired individual may have difficulties adapting to the "demands or 'stress' of the workplace," and "may have difficulty meeting the requirements of even so-called 'low-stress' jobs," the ALJ is required to make a thorough, individualized assessment of the individual's ability "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id.* at *5, 6; *see also Collins v. Colvin*, 15-CV-423-FPG, 2016 WL 5529424, at *3 (W.D.N.Y. Sept. 30, 2016) ("Because stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called 'low-stress' jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his [or her] ability to work." (citation omitted)).

Here, the record contains substantial evidence suggesting that Plaintiff's social functioning in a work setting might be significantly impaired by her mental limitations, especially her fear of social interactions with neighbors and strangers, fear of objects (fallen tree), hypervigilance, avoidance of people, and social isolation. Tr. 1227, 1229, 1241, 1245, 1247. Yet, despite this evidence, the ALJ failed to provide a comprehensive assessment of how such limitations impacted Plaintiff's ability to perform basic demands of simple and unskilled work, and how even an occasional decision making, or an occasional interaction with supervisors or coworkers could potentially trigger Plaintiff's symptoms. Limiting Plaintiff to simple, unskilled, and low stress work was insufficient because "the pertinent question is whether [claimant's] psychiatric issues

will interfere with [her] ability to function on a daily basis when faced with the normal stressors that arise in a typical competitive workplace environment." *Thomas v. Colvin*, No. 6:15-cv-06629(MAT), 2016 WL 6993384, at *5 (W.D.N.Y. Nov. 30, 2016); *Collins*, 2016 WL 5529424, at *3. Therefore, without the ALJ's reliance on any medical opinion about Plaintiff's abilities to function in a work setting and the lack of an individualized detailed assessment of how such limitations affected Plaintiff's ability to work, it is unclear how the ALJ determined Plaintiff's ability to function on a daily basis in a restrictive and isolated setting.

Accordingly, remand for further proceedings is appropriate. On remand, the Commissioner may "employ one of the several methods available to ensure that there is a competent medical opinion in the record," including by "requesting additional information from a treating physician, obtaining [a] consultative examination, or requesting an opinion from a medical expert." *Brauer v. Comm'r of Soc. Sec.*, 17-CV-1288, 2019 WL 3074060, at *6 (W.D.N.Y. July 15, 2019). "This may help to avoid a situation in which the ALJ is left without guidance from a medical source." *Id.* The Court recognizes that remanding this case for further proceedings will unfortunately delay the disposition of this case that has already been pending for over five years. However, "absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits." *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 15) is hereby GRANTED IN PART as to remand for further proceedings and DENIED IN PART as to remand for calculation of benefits, and the Commissioner's motion for judgment on the pleadings (ECF No. 24) is DENIED. This case is hereby REMANDED to the Commissioner for

further proceedings consistent with this order. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: November 16, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court